**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Liqin Cai,<br><br>          Plaintiff,<br><br>          vs.<br><br>K Health Inc.<br><br>          Defendant. | Civil Action No. 1:24-cv-00185<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Liqin Cai, by and through her attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges upon personal knowledge and information and belief, as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Liqin Cai ("Ms. Cai" or "Plaintiff") brings this action against her former employer, Defendant K Health Incorporated ("K Health" or "Defendant"). K Health subjected Ms. Cai to unlawful discrimination, unequal pay, retaliation in response to her complaints of discrimination, and retaliation in response to her exercise of her right to protected medical leave. Defendant's treatment of Ms. Cai violated the Federal Equal Pay Act, 29 U.S.C. § 206, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), the New York Equal Pay Law, as amended, New York Labor Law Art. 6, § 194 ("NYLL"), the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the New York State Human Rights Law, Executive Law §§ 209-301 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, § 8-107 *et. seq.* ("NYCHRL").[1]

---

[1] Ms. Cai filed a Charge of Discrimination with the Equal Employment Opportunity Commission on September 26, 2023. Ms. Cai intends to pursue a claim under Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e *et seq.* ("Title VII") following the issuance of a right to sue letter.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law and city law claims brought under the NYSHRL and the NYCHRL pursuant to 28 U.S.C. § 1367.

3.      This Court has jurisdiction over Plaintiff's claims because this action involves questions regarding the deprivation of Plaintiff's rights under federal law, including the Federal Equal Pay Act, 29 U.S.C. § 206(d)(1) and the FMLA.

4.      Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because Defendant K Health maintains a place of business in this district, and the events and omissions which give rise to Plaintiff's claims occurred in this district.

## PARTIES

5.      Plaintiff resides in New York, New York.

6.      K Health maintains a place of business at 125 West 25th Street, 7th Floor New York, New York. Plaintiff worked at this location.

7.      Plaintiff was employed by K Health from March of 2021 until December of 2022.

8.      By April of 2022, Plaintiff had worked for K Health for more than a year and had worked more than 1250 hours; thus, she was an eligible employee under the FMLA.

9.      K Health has 50 or more employees in its New York City office for each working day during each of 20 or more calendar workweeks in the current and preceding year, and therefore, is a covered employer under the FMLA.

## FACTUAL STATEMENT

10.     In March of 2021, K Health hired Ms. Cai as its first female Vice President of Engineering.

11.     Ms. Cai had multiple competing job offers at the time she accepted the position. She chose to accept the offer of employment at K Health because the Company promised her a leadership role overseeing all K Health engineering teams.

12.     Ms. Cai's initial salary was $300,000 per year. As part of her initial compensation package, Ms. Cai was also granted 100,000 stock options with a four-year vesting schedule.

13.     K Health's co-founder and Chief Executive Officer, Allon Bloch, and Chief Operating Officer, Scott Chesrown, promised Ms. Cai a title promotion to either Senior Vice President or Chief Technology Officer if Ms. Cai demonstrated strong performance at the Company.

14.     In her role as Vice President of Engineering, Ms. Cai was responsible for overseeing a team of more than 80 individuals.

15.     In a matter of months after assuming her role, Ms. Cai executed on several project deliverables that K Health's engineering team had been unable to complete over the course of several years, including: (1) K Health's "Urgent Care on the web," (2) K Health's Primary Care Product, (3) a consolidation of user account flow and code repositories, and (4) the implementation of a data analytics platform across all products.

16.     In February of 2022, less than one year after joining K Health, Ms. Cai's salary was increased by $50,000 in recognition of her immediate and significant contributions at K Health.

17.     Despite the modest increase in her salary, Ms. Cai was treated differently than the three male vice presidents at the Company.

18.     For example, Ms. Cai's work was heavily scrutinized compared to the work product of her male peers at the vice president level.

19.     Ms. Cai also noticed disparate treatment across gender lines when she attempted to deliver directives to members of her engineering team. Instead of respecting her decision-making, K Health's male-dominated executive team, including co-founder and Chief Technology Officer Israel Roth, ignored Ms. Cai's directives and overrode her decisions without consulting her.

20.     As a result, Ms. Cai's engineering team quickly learned that the Company did not respect her leadership and her directives could be overridden at any time.

21.     Ms. Cai noticed that male members of the executive team in other leadership roles at K Health were given autonomy and were not constantly undermined by Company leadership as Ms. Cai was.

22.     In April of 2022, Ms. Cai underwent open heart surgery to repair a mitral valve. She was hospitalized for five days.

23.     Ms. Cai originally planned to take four months of medical leave to give her sufficient time to recover from open heart surgery.

24.     Ultimately, however, Ms. Cai returned to work after only seven weeks of leave.

25.     Upon her return from medical leave, Ms. Cai immediately noticed that her work environment at K Health had markedly changed.

26.     Specifically, Ms. Cai noticed that her work responsibilities were reduced and that attitudes towards her had worsened.

27.   K Health's executive team expressed unfounded concerns about her physical condition and ability to perform in her role post-surgery.

28.   Upon her return from medical leave, Ms. Cai found herself further sidelined from strategic planning and altogether excluded from engineering team decisions.

29.   Ms. Cai was also unfairly blamed for the shortcomings of a project that was completed while she was out on medical leave.

30.   K Health's leadership actively promoted Ms. Cai's peers, while her own title promotion was inexplicably delayed.

31.   Ms. Cai made numerous complaints about the discriminatory treatment she faced at K Health.

32.   For example, in July of 2022, Ms. Cai wrote to CEO Bloch after CTO Roth made changes to her team without consulting her. Ms. Cai complained specifically about the disrespect she continued to endure from Roth and another male colleague. She told Bloch and Roth that she doubted her male colleagues "ever disrespected previous male executives in [her] role."

33.   In October of 2022, Ms. Cai made another complaint of gender discrimination, this time to both the CEO and the Chief People Officer, Simon Jones. Ms. Cai made clear that she felt she was being treated differently because of her gender. She pointed again to the lack of respect for her authority and reported that male colleagues were dismissive of her leadership.

34.   Despite her repeated complaints of gender discrimination, the work environment at K Health did not improve for Ms. Cai.

35.   During the summer of 2022, after Ms. Cai continued to be sidelined and undermined, she realized there was no real opportunity for career advancement for her at K

Health. Notably, despite promises of title advancement, Ms. Cai's promotion was repeatedly delayed.

36.     In contrast, Ms. Cai's male colleagues were not required to battle for a title that reflected the work they performed.

37.     In fact, Ms. Cai's male colleagues were promoted from senior directors to vice presidents and therefore were promoted to Ms. Cai's level, even though they had significantly less responsibility, experience, and had accomplished far less than Ms. Cai.

38.     Ms. Cai, the only female on the executive team for most of her tenure at K Health, found her advancement at the Company stunted based on her gender and as a result of her medical leave.

39.     The gender discrimination Ms. Cai faced at K Health extended to her compensation package.

40.     Despite Ms. Cai's outstanding performance throughout her employment at K Health, she was compensated less well than her male colleagues, despite performing substantially similar work.

41.     Ms. Cai discovered that she had been awarded fewer stock options than her male colleagues even though they were at the same level and had similar responsibilities.

42.     For example, Ms. Cai learned that the Vice President of Product Development was awarded 150,000 shares upon joining the Company; Ms. Cai was offered only 100,000 shares.

43.     Upon information and belief, Ms. Cai was offered the lowest number of stock options compared to all current and former Vice Presidents of Engineering, all of whom are men.

44.     Ultimately, Ms. Cai found the environment at K Health to be so intolerable that she informed the Company's leadership of her intention to resign.

45.     At the time she was considering resigning, Ms. Cai's strike price was $10 per share, which effectively meant that her options were underwater relative to the Company's most recent valuation.

46.     As a result, Ms. Cai approached K Health leadership and asked that they reprice her options given her tremendous contributions to the Company.

47.     In a final act of discrimination and retaliation, K Health refused to change Ms. Cai's strike price for exercising her options prior to her departure from the Company.

48.     At around the same time Ms. Cai inquired about stock repricing, K Health's CFO was repeatedly reaching out to Ms. Cai to confirm her resignation date and request an official letter of resignation.

49.     Ms. Cai found it odd that the CFO expressed an urgent need to determine her resignation date.

50.     Nevertheless, as requested, Ms. Cai submitted a formal resignation letter and resigned from her position at K Health on December 1, 2022.

51.     Approximately one week after Ms. Cai's resignation from the Company, K Health reduced the option strike price for all employees to $2.10 per option.

52.     If Ms. Cai had been offered the reduced strike price that K Health offered to other employees, her options would have had value.

53.     Upon information and belief, K Health planned the strike repricing to take effect immediately after Ms. Cai's resignation to deprive Ms. Cai of the opportunity to exercise options at the lower strike price.

54.    Upon information and belief, K Health's management knew that they would revise the option strike price at the time of Ms. Cai's resignation.

## FIRST CAUSE OF ACTION
### Violation 29 U.S.C. § 206, Equal Pay Act ("EPA")

55.    Ms. Cai hereby repeats and realleges each and every one of the above allegations as if fully set forth herein.

56.    During Ms. Cai's employment, K Health required Ms. Cai to perform the same role as other male employees, requiring equal skill, effort, and responsibility under similar working conditions, and paid Ms. Cai at a rate of pay, including salary, bonus, stock options and other renumeration less than that of male employees.

57.    K Health engaged in patterns, practices, and/or policies of employment which discriminated against Ms. Cai on the basis of her sex by paying Ms. Cai less than male employees performing the same job duties which require equal skill, effort, and responsibility under the same working conditions.

58.    Upon information and belief, Ms. Cai was offered the lowest number of stock options compared to all current and former Vice Presidents of Engineering, all of whom are men.

59.    Upon information and belief, in December of 2022, K Health provided male employees with a reduced strike price that increased the value of their stock options but did not grant the same benefit to Ms. Cai. As a result of K Health's unlawful and discriminatory conduct in violation of the EPA, Ms. Cai is entitled to monetary damages, liquidated damages, costs, and attorneys' fees.

## SECOND CAUSE OF ACTION
### Violation of the New York State Equal Pay Act, NYLL § 194

60.     Ms. Cai hereby repeats and realleges each and every one of the above allegations as if fully set forth herein.

61.     Ms. Cai is an Asian female and is in a protected class for purposes of NYLL Art. 6, § 194, New York State's Equal Pay Act ("New York EPA").

62.      Upon information and belief, Ms. Cai was paid less for the same or substantially similar work as her male peers with similar titles and/or roles.

63.     Upon information and belief, Ms. Cai was awarded fewer stock options than her male colleagues who performed substantially similar work and/or who previously held her position and therefore undercompensated her as compared to male employees, in violation of the New York EPA.

64.     Upon information and belief, in December of 2022, K Health provided male employees with a reduced strike price that increased the value of their stock options but did not grant the same benefit to Ms. Cai.

65.     The New York EPA protects against any deficient renumeration for employment across gender lines and other protected classes.

66.     Defendant not only awarded Ms. Cai fewer stock options than her male peers, but K Health's leadership kept the strike price on employee options high until one week after Ms. Cai's departure.

67.     As a consequence of Defendant K Health's unlawful acts, Ms. Cai has been deprived of compensation and is entitled to recovery of such amounts plus up to three hundred percent liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and other compensation pursuant to NYLL § 198.

**THIRD CAUSE OF ACTION**
**Disparate Treatment in Violation of Title VII**
**of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2**

68.    Ms. Cai hereby repeats and realleges each and every one of the above allegations as if fully set forth herein.

69.    Ms. Cai is an Asian female and is thus a member of protected classes under Title VII based on her gender and race.

70.    Defendant K Health's conduct as alleged herein, including the conditions of Plaintiff's employment and retaliation against Plaintiff after she complained about discrimination, constitutes unlawful discrimination against Plaintiff on the basis of her gender.

71.    Defendant K Health violated Title VII by discriminating against Plaintiff in the terms and conditions of her employment, including but not limited to her unequal compensation compared to other male employees.

72.    The option strike price reduction immediately after Ms. Cai's departure was a discriminatory act aimed at reducing Ms. Cai's total compensation as compared to her male counterparts.

73.    As a direct and proximate result of K Health's conduct in violation of Title VII, Ms. Cai has suffered and continues to suffer irreparable injury and substantial losses, including, but not limited to, past and future lost wages and benefits, severe mental anguish, and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of Title VII
### of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3

74.     Ms. Cai hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

75.     Ms. Cai engaged in protected activities under Title VII when she complained about discrimination against women by Defendant.

76.     Defendant K Health knew about the protected activity.

77.     The option strike price reduction immediately after Ms. Cai's departure was a retaliatory act aimed at reducing Ms. Cai's total compensation.

78.     Defendant K Health had no valid business justification for the retaliatory actions taken against Ms. Cai following her engagement in protected activity.

79.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Title VII, Ms. Cai has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

80.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Title VII, Ms. Cai has suffered, and continues to suffer, mental anguish and emotional distress for which she is entitled to an award of damages.

81.     Defendant's unlawful and retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Ms. Cai is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### Retaliation for taking FMLA Leave in Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.

82.     Ms. Cai hereby repeats and realleges each and every one of the above allegations as if fully set forth herein.

83.     Ms. Cai was an "employee" within the meaning of the FMLA.

84.     Defendant K Health was Ms. Cai's "employer" within the meaning of the FMLA.

85.     Ms. Cai was a qualifying individual who was entitled to FMLA leave.

86.     Defendant K Health is, and has at all relevant times, been a covered employer under the FMLA.

87.     In April of 2022, Ms. Cai exercised her right to take leave for which she was qualified under the FMLA.

88.     Specifically, Ms. Cai took medical leave to undergo open heart surgery, to address a serious health condition.

89.     Immediately upon Ms. Cai's return from medical leave, her work responsibilities were reduced considerably.

90.     K Health's leadership team expressed concerns about her ability to perform in her role post-surgery, and she was excluded from strategic planning and unfairly blamed for unsatisfactory work performed by others while she was out on medical leave.

91.     K Health's leadership actively promoted Ms. Cai's peers, while Ms. Cai's own promotion was inexplicably delayed after she exercised her need for medical leave.

92.     K Health's treatment of Ms. Cai immediately after her return from medical leave amounts to retaliation in violation of the FMLA.

93.     Ms. Cai has suffered and continues to suffer harm for which she is entitled to an award of damages, including monetary damages, compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

## SIXTH CAUSE OF ACTION
### Gender Discrimination in Violation of the NYSHRL
### (N.Y. Exec. Law §§ 296 *et seq.*)

94.     Ms. Cai hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

95.     Ms. Cai was an "employee" within the meaning of the NYSHRL.

96.     Defendant K Health was Ms. Cai's "employer" within the meaning of the NYSHRL.

97.     Because of her gender, Ms. Cai was treated less well than her male colleagues as she was repeatedly sidelined, undermined and excluded by male leadership, passed over for promotion, and paid less in total renumeration.

98.     K Health was well aware of the gender discrimination Ms. Cai faced because she repeatedly complained directly to K Health leadership, including the Chief Executive Officer, Chief Technology Officer, and Chief People Officer.

99.     Despite knowing of the gender discrimination, K Health did not take corrective action and did nothing to investigate or address the gender discrimination Ms. Cai regularly faced in her role.

100.    The option strike price reduction, immediately after Ms. Cai's departure, was another discriminatory act aimed at reducing Ms. Cai's total compensation.

101.    By the acts and practices described above, K Health discriminated against Ms. Cai in the terms and conditions of her employment on the basis of her gender in violation of the NYSHRL.

102.     Ms. Cai has suffered and will continue to suffer irreparable injury, monetary

damages, and mental anguish, humiliation, and damage to reputation as a result of K Health's

discriminatory practices.

**SEVENTH CAUSE OF ACTION**
**Retaliation in Violation of the NYSHRL**
**(N.Y. Exec. Law §§ 296 *et seq.*)**

103.     Ms. Cai hereby repeats and realleges each and every allegation in the preceding

paragraphs as if set forth fully herein.

104.     Ms. Cai was an "employee" within the meaning of the NYSHRL.

105.     Defendant K Health was Ms. Cai's "employer" within the meaning of the

NYSHRL.

106.     The NYSHRL makes it at unlawful practice to retaliate against an employee for

complaining about a discriminatory practice.

107.     Ms. Cai engaged in protected activities under the NYSHRL when she complained

that Defendant was discriminating against her as a woman.

108.     Defendant K Health knew about the protected activity.

109.     The option strike price reduction immediately after Ms. Cai's departure was a

retaliatory act aimed at reducing Ms. Cai's total compensation.

110.     Defendant K Health had no valid business justification for the retaliatory actions

taken against Ms. Cai following her engagement in protected activity.

111.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in

violation of NYSHRL, Ms. Cai has suffered and continues to suffer harm for which she is

entitled to an award of damages, including monetary damages, compensatory damages,

reasonable attorneys' fees and costs and any and all penalties and/or fines.

14

## EIGHTH CAUSE OF ACTION
### Gender Discrimination in Violation of the NYCHRL
### (Title 8 of the Administrative Code of the City of New York, §§ 8-107 *et seq*.)

112.    Ms. Cai hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

113.    Ms. Cai was an "employee" within the meaning of the NYCHRL.

114.    Defendant K Health was Ms. Cai's "employer" within the meaning of the NYCHRL.

115.    K Health discriminated against Ms. Cai in the terms, conditions, or privileges of her employment based on her gender as a female by usurping her leadership, undermining her in front her team, failing to promote her, and undercompensating her as compared to male colleagues.

116.    K Health was well aware of the gender discrimination Ms. Cai faced because she repeatedly complained directly to K Health leadership, including the Chief Executive Officer, Chief Technology Officer, and Chief People Officer.

117.    Despite knowing of the gender discrimination, K Health did not take corrective action and did nothing to investigate or address the gender discrimination Ms. Cai regularly faced in her role.

118.    The option strike price reduction, immediately after Ms. Cai's departure was another discriminatory act aimed at reducing Ms. Cai's total compensation.

119.    While a showing of severity and pervasiveness is not necessary to make out a claim of gender discrimination under the NYCHRL, the gender discrimination Ms. Cai endured at K Health was pervasive in a way that exceeded "petty slights."

120.    Ms. Cai has suffered and will continue to suffer irreparable injury, monetary damages, and mental anguish, humiliation, and damage to reputation as a result of K Health's discriminatory practices.

## NINTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL
**(Title 8 of the Administrative Code of the City of New York, §§ 8-107 *et seq*.)**

121.    Ms. Cai hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

122.    Ms. Cai was an "employee" within the meaning of the NYCHRL.

123.    Defendant K Health was Ms. Cai's "employer" within the meaning of the NYCHRL.

124.    The NYCHRL makes it an unlawful practice to retaliate against an employee for complaining about a discriminatory practice.

125.    Ms. Cai participated in a protected activity when she complained that the Company was discriminating against women.

126.    Defendant K Health knew about the protected activity.

127.    The option strike price reduction immediately after Ms. Cai's departure was a retaliatory act aimed at reducing Ms. Cai's total compensation.

128.    Defendant K Health had no valid business justification for the retaliatory actions taken against Ms. Cai following her engagement in protected activity.

129.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of NYCHRL, Ms. Cai has suffered and continues to suffer harm for which she is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs and any and all penalties and/or fines.

16

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of the Defendant complained of herein violate the laws of the United States and the State of New York;

B.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

C.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

D.    An award of punitive damages;

E.    An award of up to three hundred percent liquidated damages;

F.    An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated: January 10, 2024                    Respectfully submitted,
      New York, New York

                                       ___/s/_____
                                       Brendan Sweeney
                                       Rachel Haskell
                                       The Law Office of Christopher Q. Davis, PLLC
                                       80 Broad St, Suite 703
                                       New York, New York 10004
                                       646-430-7930 (main)